Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle, Sr. | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3830 | **DATE** | 8/13/2004 |
| **CASE TITLE** | Ross vs. Culver Franchising System, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Before the court is Defendant's Motion for Summary Judgment. Defendant's Motion for Summary Judgment is granted. See attached opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 16 2004 date docketed | 62 |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2004 AUG 13 PM 4:03 | AUG 16 2004 date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NORM and DENISE ROSS, )
 )
                    Plaintiffs, ) No. 01 C 3830
 )
v. ) Honorable Charles R. Norgle
 )
CULVER FRANCHISING SYSTEM, Inc., )
 )
                    Defendant. )

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge:

Plaintiffs, Norm[1] and Denise Ross ("Rosses"), have filed suit, raising both contract and tort claims, against Defendant, Culver Franchising System, Inc. ("Culver"), based on Culver's decision not to award the Rosses a franchise. Before the court is Defendant's motion for summary judgment, brought pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendant's motion is granted.

**I. BACKGROUND**[2]

**A. Facts**

Culver is a Wisconsin corporation with its principal place of business in Prairie du Sac, Wisconsin. Culver operates and franchises restaurants known as Culver's Frozen Custard and Butter Burgers throughout the Midwest, including Illinois. In November 1999, Norm and Denise Ross contacted Culver and inquired about franchise opportunities in Illinois. In response to the Rosses'

---

[1] See infra note 3.

[2] The court takes the facts from the parties' Local Rule 56.1 statements and accompanying briefs. Disputed facts are noted in the text.

inquiry, Culver sent them a Uniform Franchise Offering Circular, which included pertinent information for prospective franchisees, as well as a Franchise Questionnaire and a Request for Personal Financial Statement. The Rosses completed the Franchise Questionnaire and a Request for Personal Financial Statement, and returned them to Culver.

In January 2000, the Rosses met with one of Culver's sales representatives, Tom Wakefield, to discuss the Uniform Franchise Offering Circular. The Uniform Franchise Offering Circular provided specific information about Culver's business, the specific obligations of its franchisees, the estimates of costs for a franchisee to enter the business, including the initial franchise fee and investment costs, and ongoing fees to be paid to the franchisor. The Uniform Franchise Offering Circular also contained a complete copy of the formal Franchise Agreement that was required to be executed in order to establish a Culver franchise. Norm Ross understood that Culver's act of providing the Uniform Franchise Offering Circular did not constitute an offer to sell a franchise, and that any agreement was not effective until the Franchise Agreement was signed by the Rosses and the President of Culver, Craig Culver. As follow up to their meeting, Wakefield sent the Rosses financial sales projections, indicating potential returns on the operation of a Culver franchise. Thereafter, the Rosses expressed an interest in pursuing a Culver franchise.

In a letter dated February 28, 2000, Wakefield requested that the Rosses sign a Preliminary Agreement, as well as provide a financial statement, confidentiality agreement and a $5,000 application fee, which they provided. The Rosses understood that the Preliminary Agreement was the first of many steps in a business arrangement between themselves and Culver. Under the terms of the Preliminary Agreement, the $5,000 application fee would be applied to the franchise fee if the Rosses were approved as a franchisee, or returned if they were not approved as a franchisee. The

amount of the franchise fee was $42,000. Also under the terms of the Preliminary Agreement, the Rosses were required to undergo a 60-hour work week at one of Culver's restaurants. The purpose of the work arrangement was to allow the Rosses to understand the business and to allow Culver to evaluate the Rosses' abilities.

Denise Ross performed the 60-hour work week at a Culver restaurant in Spring Green, Wisconsin. The reviews of Denise Ross' performance were mixed, indicating that she worked hard but might not have the commitment required to operate a Culver franchise. On March 15, 2000, after the completion of the work arrangement, Culver sent a letter declining the Rosses' request to become Culver franchisees. The letter stated that "[t]he reasons for this decision are that the total commitment that is necessary to meet our standards and the demands of the business are in conflict with your personal life goals." Def.'s LR 56.1, Ex. 9.

Upon receipt of the March 15, 2000 letter, Norm Ross called the Chief Executive Officer of Culver, Phil Keiser, to request a meeting and try to convince Culver to reconsider its decision. On March 22, 2000, the Rosses met with Keiser and the President of Culver, Craig Culver, at Culver's corporate headquarters in Prairie du Sac, Wisconsin. During the meeting, Keiser reiterated his impression that the Rosses did not have the commitment required to run a Culver franchise, and indicated that it would take a major commitment to operate a Culver franchise. The Rosses assured Keiser that they were prepared to make that commitment.

The parties' accounts of this meeting differ. According to the Rosses, if Culver awarded them a franchise, they offered to show their commitment by having Denise Ross work at another Culver's location until she could begin her formal franchisee training in August 2000. The Rosses also indicate that they informed Culver that other commitments had to be resolved prior to beginning

3

work at another Culver's location. According to Culver, the Rosses would be allowed to continue the franchise application process, but only if Denise Ross proved her commitment by satisfactorily working full-time at a Culver restaurant in North Aurora, Illinois until she could enroll in an August 2000 franchisee training class. Culver also indicates that the Rosses gave assurance that they would do whatever it took to be approved as a franchisee.

Keiser memorialized the meeting in a letter dated March 23, 2000. The March 23, 2000 letter stated:

> It is my pleasure to formally communicate your operational approval to become a Culver's franchisee to begin training in our August class. As we discussed, it will be necessary for you to work in the North Aurora restaurant as a prerequisite to your attending the sixteen-week training program. I have reviewed with Greg Kubitz what our needs are and he has agreed to assist you in any way he can to make this happen. We will discuss together at a future time what type of work schedule and duties will meet this requirement.
> Now the real work begins. Finalizing the real estate, building plans, training and hiring a management team are just a few of the immediate tasks at hand. In the future, your next step will be to arrange with Tom Wakefield to schedule the signing of the franchise agreement. In addition we will have an orientation in late July or early August for those entering our August 2000 class, with our team, to establish a plan for your restaurant and to clarify roles to ensure that your Culver's restaurant is a success.
> Everyone here at Culver Franchising is looking forward to working with you and your team as we work together to grow our business. Please fell free to contact me, or anyone else on our team, to make this process as smooth as possible.

Def.'s LR 56.1, Ex. 10.

Culver could set whatever criteria it chose for approval of franchisees. However, with respect to working at the Culver restaurant in North Aurora, the parties dispute whose obligation it was to ensure that it took place and what specifically was required. According to the Rosses, Culver never contacted them and told them exactly when Denise Ross was to work, and further, never indicated that Denise Ross was required to work full-time. According to Culver, the Rosses never

4

contacted them after meeting with the North Aurora franchisee, Greg Kubitz, with regard to how Denise Ross would fulfill the requirement that she work full-time in that location until she could enroll in an August 2000 training class.

It is undisputed that the Rosses understood that there were many steps that they needed to take before they could open and operate a Culver franchise, including, *inter alia*: working at the Culver restaurant in North Aurora, signing the Franchise Agreement and paying the franchise fee. After receiving the March 23, 2000 letter, the Rosses never attempted to contact Tom Wakefield to arrange signing a Franchise Agreement, nor did the Rosses pay the franchise fee. With respect to working at the Culver restaurant in North Aurora, on April 2, 2000, Norm Ross sent a facsimile to Keiser. The April 2, 2000 facsimile stated:

> We have not yet contacted Greg Kubitz, as you have still not made it clear just exactly what your needs are for Denise. We need to know more specifically what your expectations are for her during this period. As we explained previously, we have carefully considered planning and timing of this venture, and are presently involved in commitments. For many reasons, Denise could not commit to a full time position commencing in the near future, lasting until the start of training in August. She, (and I) could however consider select nights and weekends.
> We feel a better proposal would be for a shorter amount of time at the North Aurora store, and then to participate in new store openings in the area: Huntley, Oswego, Sycamore. This would give us a better look at a level of business closer to what we anticipate.
> We need to agree and finalize these details prior to signing the franchise agreement.

Def.'s LR 56.1, Ex. 11.

According to Culver, the proposal contained in Norm Ross' April 2, 2000 facsimile was different than what was discussed at the March 22, 2000 meeting, which required Denise Ross to work full-time at the Culver restaurant in North Aurora until she could enroll in an August 2000 franchisee training class. It is undisputed that as of April 2, 2000, there was no agreement on all the

5

terms and conditions between the parties, and the Rosses wanted clarification prior to signing the Franchise Agreement and paying the franchise fee.

According to Culver, since Denise Ross had not begun work at the Culver restaurant in North Aurora, on May 9, 2000, Keiser sent a letter to the Rosses informing them that Culver was returning to its original decision to not award the Rosses a franchise, and also returning the Rosses' $5,000 application fee. Prior to receiving the May 9, 2000 letter, Norm Ross sent a letter to Keiser on May 15, 2000, which, *inter alia*, requested that Denise Ross postpone the franchisee training. In response to the May 15, 2000 letter, Keiser wrote a letter dated May 18, 2000 informing the Rosses that the franchise that they would have received had been awarded to another franchisee. On May 26, 2000, the Rosses received the letter dated May 9, 2000, which informed them that Culver was returning to its original decision to not award the Rosses as franchise, as well as a check returning the Rosses' $5,000 application fee, which the Rosses have not cashed.

At issue is whether the March 23, 2000 letter gave rise to an enforceable contract. According to the Rosses, the March 23, 2000 letter constitutes a franchise agreement. According to Culver, the March 23, 2000 letter is not a franchise agreement, because the formal Franchise Agreement was never executed, a prerequisite specifically highlighted by the March 23, 2000 letter, and because that letter lacks the essential terms and is too indefinite to be the basis of a franchise agreement.

## B. Procedural History

On April 24, 2001, the Rosses filed a lawsuit in the Circuit Court of Kane County, Illinois, which Culver removed to federal court based on diversity jurisdiction. The complaint contained five counts, including alleged violations of the Illinois Franchise Disclosure Act ("IFDA"), 815 Ill. Comp. Stat. 705/1 *et seq.*, common law breach of contract, violation of the Illinois Consumer Fraud

and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 Ill. Comp. Stat. 505/1 *et seq.*, and a claim of promissory estoppel.

On January 24, 2002, the court ordered that the parties' final pretrial order was due on September 6, 2002, and indicated that a trial date would be set after reviewing the final pretrial order. On June 17, 2002, Culver filed a motion for summary judgment, which the parties fully briefed. As of September 6, 2002, no final pretrial order had been filed. On June 16, 2004, after there had been no activity in the case for over one year, the court entered a minute order stating that based on the record the parties may have reached a settlement and abandoned the case. The court ordered that the parties submit an agreed written status report, informing the court whether a case or controversy remained. The parties responded, indicating that no settlement had been reached and that the parties were awaiting ruling on the motion for summary judgment. The parties' agreed written status report also informed the court that Plaintiff, Norm Ross is deceased; however, no formal motion has been filed with respect to suggestion of the death. See Fed. R. Civ. P. 25(a)(1) (governing substitution of a party after death). No motion was filed to amend the complaint as to parties plaintiff. The motion for summary judgment is now before the court.

## II. DISCUSSION

### A. Standards for Summary Judgment

The Seventh Circuit has indicated that cases involving contract interpretation are "particularly suited to disposition by summary judgment." United States v. 4500 Audek Model No. 5601 AM/FM Clock Radios, 220 F.3d 539, 542 (7th Cir. 2000). A grant of summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The non-moving party cannot rest

on the pleadings alone, but must identify specific facts that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Fed. R. Civ. P. 56(e). "Conclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hosp. and Medical Center, 328 F.3d 890, 893-94 (7th Cir. 2003) (citing Lujan v. Nat'l. Wildlife Federation, 497 U.S. 871, 888-89 (1990)). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1999) (citing Anderson, 477 U.S. at 249-50; 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure: Civil § 2712, at 574-78 (2d ed. 1983)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586.

## B. The Rosses' Claims

### 1. Illinois Franchise Disclosure Act

#### (a) Termination of Franchise

In count I of the complaint, the Rosses allege that the March 23, 2000 letter represents an agreement to award a franchise under the Illinois Franchise Disclosure Act, and that Culver terminated that franchise in violation of 815 Ill. Comp. Stat. 705/19, which provides that a franchisor may not terminate a franchise prior to expiration of its term except for good cause.

This claim depends on the existence of a franchise, as defined by the IFDA. Section 705/3 of the IFDA defines the term franchise, as follows:

> "Franchise" means a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:
> (a) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, under a marketing plan or system prescribed or suggested in substantial part by a franchisor; and
> (b) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and
> (c) the person granted the right to engage in such business is required to pay, directly or indirectly, a franchise fee of $500 or more

815 Ill. Comp. Stat. 705/3(1).

The record evidence demonstrates that the Rosses have failed to establish that the March 23, 2000 letter is a franchise agreement. In response to the Rosses' November 1999 inquiry, Culver sent them a Uniform Franchise Offering Circular, which included pertinent information for prospective franchisees, as well as a complete copy of the formal Franchise Agreement that was required to be executed in order to establish a Culver franchise. In January 2000, the Rosses met with one of

9

Culver's sales representatives, Tom Wakefield, to discuss the Uniform Franchise Offering Circular. Norm Ross understood that Culver's act of providing the Uniform Franchise Offering Circular did not constitute an offer to sell a franchise, and that any agreement was not effective until the Franchise Agreement was signed by the Rosses and the President of Culver, Craig Culver.

The following exchange during Norm Ross' deposition belies the argument that the March 23, 2000 letter established a franchise relationship:

> Ross: ... There are many steps that will have to take place before we are - - we open and operate a successful franchise business.
> Counsel for Culver: And one of them is to become a franchisee?
> Ross: One of them is to sign the franchise document and provide the fees for same.
> ***
> Counsel for Culver: You've got to sign the franchise agreement?
> Ross: Yes.

Def.'s LR 56.1, Norm Ross Deposition at 95. The following exchange during Denise Ross' deposition also belies the argument that the March 23, 2000 letter established a franchise relationship:

> Counsel for Culver: . . . Did you understand that you needed to sign a franchise agreement?
> Ross: Yes, I knew I needed to sign a franchise agreement.
> Counsel for Culver: All right. And you didn't, you never signed a franchise agreement, did you?
> Ross: No.

Def.'s LR 56.1, Denise Ross Deposition at 82. Further, in the weeks immediately after the Rosses received the March 23, 2000 letter, which they claim represented an agreement to award them a Culver franchise, Norm Ross sent a facsimile to Culver stating: "We need to agree and finalize these details prior to signing the franchise agreement." Def.'s LR 56.1 Ex. 11. Norm Ross' April 2, 2000 facsimile also belies the claim that the March 23, 2000 letter established a franchise relationship.

The undisputed evidence shows that the Rosses and Culver never signed a Franchise Agreement. The Rosses' deposition testimony also indicates that they knew that they were required to sign the Franchise Agreement in order to establish a franchise relationship with Culver. Further, the undisputed evidence shows that the Rosses never paid the $42,000 franchise fee. As such, no franchise agreement existed and the Rosses' claim that Culver terminated that franchise without good cause, without notice and without an opportunity to cure in violation of 815 Ill. Comp. Stat. 705/19 fails as a matter of law.

**(b) Fraudulent Practices in Connection with Offer or Sale of Franchise**

In the alternative, in count I of the complaint, the Rosses allege that the actions of Culver in connection the offer of the sale of a franchise constitute violations of sections 705/6, 705/16 or 705/19 of the Illinois Franchise Disclosure Act. Specifically, the Rosses allege that Culver prevented the Rosses from fulfilling certain conditions required in order to be awarded a franchise, namely Denise Ross working at the Culver restaurant in North Aurora.

Section 705/6 of the IFDA provides that "[i]n connection with the offer or sale of any franchise made in this State, it is unlawful for any person, directly or indirectly, to: (a) employ any device, scheme, or artifice to defraud; (b) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (c) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 815 Ill. Comp. Stat. 705/6. Section 705/16 discusses the form and content of disclosure statements, further stating that "[a]ll statements in the disclosure statement shall be free from any false or misleading statement of a material fact, shall not omit to state any material fact required to be stated or necessary to make the

11

statements not misleading, and shall be accurate and complete as of the effective date thereof." 815 Ill. Comp. Stat. 705/16. Section 705/19, discussed briefly supra, provides that a franchisor may not terminate a franchise prior to expiration of its term except for good cause. See 815 Ill. Comp. Stat. 705/19.

The Rosses' assert that Culver prevented the Rosses from fulfilling certain conditions required in order to be awarded a franchise, namely Denise Ross working at the Culver restaurant in North Aurora, is without merit. First, that fact as alleged is not actionable under section 705/16, as it does not pertain to statements in a disclosure. See 815 Ill. Comp. Stat. 705/16. Second, that fact as alleged is not actionable under section 705/19, as no franchise agreement came into existence. See supra Section II. B. 1 (a). Lastly, assuming without deciding that such a claim would be actionable under section 705/6, the Rosses have failed to proffer any evidence that Culver did anything to prevent Denise Ross from working at the Culver restaurant in North Aurora, which was a prerequisite to the Rosses proceeding further in obtaining a franchise.

It is undisputed that Culver could set whatever criteria it chose for approval of franchisees, including Denise Ross working full-time at the Culver restaurant in North Aurora. According to the Rosses, Culver never contacted them and told them exactly when Denise Ross was to work, and further never indicated that Denise Ross was required to work full-time. However, beyond their conclusory allegations that Culver failed to contact them with regard to Denise Ross' work requirement, the Rosses provide no evidence to support that argument. As the Seventh Circuit has stated, "summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Johnson v. Cambridge Industries, Inc., 325 F.3d 892, 901 (7th Cir. 2003) (citing Schacht v. Wisconsin Dep't.

12

of Corr., 175 F.3d 497, 504 (7th Cir.1999)). Further, the evidence indicates that the Rosses sought to change the requirements of work at the Culver restaurant in North Aurora. Norm Ross' April 2, 2000 facsimile sought to change the work requirement by altering its duration and location. See Def.'s LR 56.1, Ex. 11. As such, the Rosses' claim that Culver prevented them from fulfilling certain conditions required in order to be awarded a franchise in violation of 815 Ill. Comp. Stat. 705/6 fails as a matter of law.

**2. Breach of Contract**

**(a) Breach of Franchise Agreement**

In count III of the complaint, the Rosses allege that the March 23, 2000 letter was a contract to award the Rosses a Culver franchise, which Culver breached by awarding the franchise to another Culver franchisee.

"Illinois conditions the enforceability of a putative contract on two predicates: a sufficiently concrete expression of the essential terms of the agreement, as well as an intent to be bound by that agreement." Ocean Atlantic Development Corporation v. Aurora Christian Schools, Inc., 322 F.3d 983, 995 (7th Cir. 2003) (citing Academy Chicago Publishers v. Cheever, 144 Ill.2d 24, 161 Ill.Dec. 335, 578 N.E.2d 981, 983 (Ill. 1991)).

As discussed supra, the Rosses admit that the March 23, 2000 letter is not a franchise agreement. Further, the March 23, 2000 letter cannot be a binding and enforceable contract. First, it is not definite and certain in all its provisions. The Rosses admit that the parties did not have an agreement on the terms and conditions of any contract. The March 23, 2000 letter is silent with respect to a franchise location, the obligations of the parties, the duration of the franchise agreement, franchise renewal rights, and payment of the franchise fee. Second, the undisputed evidence

13

indicates that neither the Rosses nor Culver intended to be bound by the March 23, 2000 letter. In Norm Ross' April 2, 2000 facsimile, he indicated that the parties needed to agree and finalize certain details prior to the signing of the Franchise Agreement. See Def.'s LR 56.1, Ex. 11. Also, the March 23, 2000 letter explicitly states that the Rosses were required to "arrange with Tom Wakefield to schedule the signing of the franchise agreement." Def.'s LR 56.1, Ex. 10. The Rosses' deposition testimony indicates that they were aware that any franchise agreement was not effective until signed by the Rosses and the President of Culver, Craig Culver. See Quake Constr. Inc. v. American Airlines, Inc., 141 Ill.2d 281, 152 Ill.Dec. 308, 565 N.E.2d 990, 993 (Ill. 1990) ("If the parties construe the execution of a formal agreement as a condition precedent, then no contract arises unless and until that formal agreement is executed"). Thus, the Rosses' claim that the March 23, 2000 letter was a contract to award them a Culver franchise fails as a matter of law.

### (b) Breach of Preliminary Agreement

Retreating from the position that the March 23, 2000 letter represents a franchise agreement, in count II of the complaint, the Rosses allege that they had a preliminary agreement with Culver, which Culver breached by never providing the Rosses a Franchise Agreement to sign. See Pls.' Compl. ¶ 34. The Rosses are essentially arguing that the March 23, 2000 letter is a letter of intent, or an agreement to agree, with Culver.

A letter of intent may constitute an enforceable contract if it was evident that such was the intent of the parties; however, if the later execution of a formal agreement is a condition precedent to the formation of a binding contract, no prior writing will create an effective contract. See Quake Constr., 565 N.E.2d at 993; Ebert v. Dr. Scholl's Foot Comfort Shops, Inc., 137 Ill.App.3d 550, 92

14

Ill.Dec. 323, 484 N.E.2d 1178, 1185 (Ill. App. Ct. 1985). Further, if any essential term is left open for future consideration, there is no binding contract, and an agreement to agree is not enforceable.

This claim is without merit, and similarly undeveloped by the Rosses in their response to the motion for summary judgment. The undisputed evidence clearly indicates that the parties construed the execution of the formal Franchise Agreement as a condition precedent to the formation of any enforceable contract. The March 23, 2000 letter stated that, after completion of Denise Ross working at the Culver restaurant in North Aurora, the Rosses' next step was to "arrange with Tom Wakefield to schedule the signing of the franchise agreement." Def.'s LR 56.1, Ex. 10. The Rosses' deposition testimony also indicates that they were aware that any franchise agreement was not effective until signed by the Rosses and the President of Culver, Craig Culver. See Quake Constr., 565 N.E.2d at 993 ("If the parties construe the execution of a formal agreement as a condition precedent, then no contract arises unless and until that formal agreement is executed").

Further, after receiving the March 23, 2000 letter, the Rosses never attempted to contact Tom Wakefield to arrange signing a Franchise Agreement. In Norm Ross' April 2, 2000 facsimile, he indicated that the parties needed to agree and finalize certain details prior to the signing of the Franchise Agreement. See Def.'s LR 56.1, Ex. 11. The March 23, 2000 letter clearly states that the onus of ensuring that the Franchise Agreement was signed fell upon the Rosses, and the undisputed facts clearly indicate that it was they who declined to sign the Franchise Agreement before certain details were finalized. Thus, the argument that Culver breached a preliminary agreement to provide the Rosses with the Franchise Agreement is without merit.

15

### 3. Promissory Estoppel

In count V of the complaint, the Rosses allege that their reliance on the March 23, 2000 letter supports a promissory estoppel claim. Specifically, the Rosses claim that the March 23, 2000 letter is a clear and unambiguous offer awarding the Rosses a Culver franchise, which they relied on to their detriment.

"Under Illinois law, promissory estoppel requires proof of the existence of an unambiguous promise; reliance on that promise; that the reliance be reasonable and foreseeable; and that the promisee actually rely on the promise to his detriment." Sembos v. Philips Components, – F.3d –, 2004 WL 1595247, *5 (7th Cir. July 19, 2004) (citing Vajda v. Arthur Anderson & Co., 253 Ill.App.3d 345, 191 Ill.Dec. 965, 624 N.E.2d 1343, 1350 (1993)).

Contrary to the Rosses' arguments, the March 23, 2000 letter does not prove the existence of an unambiguous promise awarding the Rosses a Culver franchise. The March 23, 2000 letter is silent with respect to a franchise location, the obligations of the parties, the duration of the franchise agreement, franchise renewal rights, and payment of the franchise fee. The March 23, 2000 letter explicitly states that the parties still had to execute a formal Franchise Agreement after Denise Ross performed the requisite work at a Culver restaurant in North Aurora, both of which failed to occur. Further, the Rosses' alleged reliance on the March 23, 2000 letter is again belied by their deposition testimony, which indicates that they knew that they were required to sign the Franchise Agreement in order to establish a franchise relationship with Culver. See Def.'s LR 56.1, Norm Ross Deposition at 95, Denise Ross Deposition at 82. As such, the Rosses' promissory estoppel claim fails as a matter of law.

### 4. Illinois Consumer Fraud and Deceptive Business Practices Act

In count IV of the complaint, the Rosses allege that Culver's actions in connection with the offer of the sale of a franchise constitute violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. Specifically, the Rosses allege a deceptive act by Culver's actions of granting them approval to become a franchisee but later returning to its original decision, relying on Denise Ross having not begun work at the Culver restaurant in North Aurora, which the Rosses allege Culver prevented.

The elements for a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act are: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." Oliveira v. Amoco Oil Co., 201 Ill.2d 134, 267 Ill.Dec. 14, 776 N.E.2d 151, 160 (Ill. 2002). "The Consumer Fraud Act defines 'unfair or deceptive acts or practices' to include the use or employment of any 'deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact.'" Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A., 186 Ill.2d 472, 239 Ill.Dec. 12, 713 N.E.2d 543, 552 (Ill. 1999) (citing 815 Ill. Comp. Stat. 505/2). Illinois law is clear that the purpose of the Consumer Fraud Act would be undercut if plaintiffs could convert any suit for breach of contract into a consumer fraud action. See Zankle v. Queen Anne Landscaping, 311 Ill.App.3d 308, 244 Ill.Dec. 100, 724 N.E.2d 988, 992-93 (Ill. App. Ct. 2000) (stating that "it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy").

17

Even if Culver promised to contact the Rosses and communicate to them exactly when and how often Denise Ross was to work – an argument that the Rosses present no evidence to support, see supra Section II. B. 1 (b) – all that amounts to is a broken promise. "[A] 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it." Zankle, 724 N.E.2d at 993. Thus, Illinois law is true to the distinction between contract claims and tort claims. To the extent that the Rosses' allegations are, at their core, a claim for beach of contract, then relief is not warranted when simply repackaged as fraud-based claims.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

IT IS SO ORDERED

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 8/13/04